IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **WARSCHAWSKI PUBLIC RELATIONS, INC.**, <br> 1700 South Road <br> Baltimore, Maryland 21209, <br><br>            Plaintiff, <br><br> v. <br><br> **LVH GLOBAL, INC.,** <br> <u>Serve on:</u> <br> Amir Benesh, CEO <br> 505 Fifth Avenue, 15th Floor <br> New York, New York 10016, <br><br>            Defendant. | Civil Action No.: |

## **COMPLAINT**

Plaintiff, Warschawski Public Relations, Inc. (hereinafter "**Plaintiff**"), by its undersigned attorneys, files this Complaint against Defendant, LVH Global, Inc. (hereinafter, "**Defendant**"), for breach of contract and unjust enrichment, and in support thereof states as follows:

### **The Parties**

1. Plaintiff is a Maryland corporation with its principal place of business at 1700 South Road, Baltimore, Maryland 21209.

2. Plaintiff is a full-service marketing agency offering a full suite of marketing and advertising services, including branding, digital marketing, social media, web development, and design.

3. Defendant is a Delaware corporation with a principal place of business located at 505 Fifth Avenue, 15th Floor, New York, New York 10016.

4. Defendant is in the business of providing vacation home rentals and related luxury travel services, providing rentals of high-end properties worldwide.

## Jurisdiction and Venue

5. The Court has diversity jurisdiction of this controversy pursuant to 28 U.S.C. § 1332(a). Plaintiff is a Maryland corporation with its principal place of business in Maryland. Defendant is a Delaware corporation with its principal place of business in New York. Plaintiff seeks more than $75,000.00 in damages.

6. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court for the District of Maryland because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS APPLICABLE TO ALL COUNTS

7. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

## The One Year Retainer Agreement

8. On or about March 12, 2019, Defendant entered into a one-year Retainer Agreement with Plaintiff (hereinafter, the "Agreement"), by which Defendant agreed to pay Plaintiff in advance, a set monthly amount in exchange for a set number of hours of marketing services. *See* Retainer Agreement, a copy of which is attached as **Exhibit A**.

9. Pursuant to the Agreement, Defendant agreed to compensate Plaintiff for 80 hours of marketing services per calendar month, beginning March 1, 2019, for a term of twelve (12) months. The Agreement allowed Defendant to terminate within the first 90 days of the Agreement upon 30 days' written notice, but Defendant would still be liable for all invoices during the first 90-day period.

10. Under the Agreement, Defendant agreed to make monthly payments to Plaintiff for Plaintiff's services. In addition, in exchange for Plaintiff's reduced hourly billing rates, Defendant agreed to provide warrants for equity shares in Defendant. Plaintiff's services were assigned a value and such value constituted the exercise price to obtain the equity shares in Defendant.

11. The compensation structure set forth in the Agreement was as follows:

| Month | Warrant (shares) | Payment | Equity | Total Comp |
|---|---|---|---|---|
| March, 2019 | 833 | $15,000 | $5,000 | $20,000 |
| April, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| May, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| June, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| July, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| August, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| September, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| October, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| November, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| December, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| January, 2020 | 833 | $10,000 | $5,000 | $15,000 |
| February, 2020 | 837 | $10,000 | $5,000 | $15,000 |
| **Total** | **10,000** | **$125,000** | **$60,000** | **$185,000** |

12. On March 12, 2019, upon execution of the Agreement, Defendant also executed Exhibit B.1 of the Agreement, a warrant for 10,000 total shares, and Exhibit B.2 of the Agreement, a Simple Agreement for Future Equity (SAFE).[1]

13. On March 14, 2019, Plaintiff invoiced Defendant:

(a) $15,000 for the month of March 2019, which was due upon receipt;

(b) $10,000 for the month of April 2019, which was due March 15th;

(c) $10,000 for the month of May 2019, which was due April 15th.

*See* Invoices 100, 101, and 102 attached hereto as **Exhibit B**.

---

[1] The total amount was $45,000.

14. Defendant did not pay any of the three invoices totaling $35,000.

15. Pursuant to the express terms of the Agreement, Plaintiff had the right to terminate the Agreement for non-payment. The Agreement provides:

> **In the event of non-payment by Client of any fees or sums due hereunder, should Client fail to cure the non-payment breach within 5 business days after written notice of breach by Agency, Agency is entitled to terminate this Agreement and to stop all work without further notice. In the event Agency terminates Agreement for failure to pay, Client agrees to pay Agency $45,000 which Client acknowledges is not an election of remedy and fairly represents losses to Agency in the event of Client's uncured material breach giving rise to termination under this section.**

Agreement, ¶ 6(B). This damages in this provision address the anticipated harm a breach causes the Plaintiff which must secure personnel, perform research and other preparation, and reserve time for each client.

16. The Agreement further provides as follows:

> **Upon termination of this Agreement for any reason by either party, Client shall pay all unpaid invoices, fees, expenses and costs due to Agency through the termination date….**

Agreement, ¶ 6(C). Accordingly, in the event the Agreement is terminated for non-payment, the Defendant would owe Plaintiff for all outstanding invoices, in addition to the $45,000 due.

### Defendant Fails to Pay and Repeatedly Requests Additional Time

17. When Plaintiff asked Defendant to pay the outstanding invoices so that the parties could move forward with their work together, Defendant advised Plaintiff that its company was working through some funding issues and requested that the initial $15,000 payment due March 14, 2019 be split into two payments of $7,500.

18. Throughout the months of March and April 2019, Plaintiff worked with Defendant to amend the Agreement and accommodate Defendant's needs based on the company's financial issues.

19. On March 27, 2019, Plaintiff provided Defendant with a proposed amendment that would delay the start of the Agreement and allow Defendant to pay the initial payment of $15,000 in two installments of $7,500 as it requested.

20. Plaintiff did not receive a response from Defendant from March 27, 2019 through April 8, 2019.  Consequently, Plaintiff did not begin to provide services.

21. On April 12, 2019, Plaintiff advised Defendant that it had until April 19, 2019 to execute the amendment or it would terminate the Agreement for non-payment.

22. When Plaintiff did not hear from Defendant, it sent Defendant an email terminating the Agreement for non-payment on April 29, 2019.

23. As part of its termination email, Plaintiff included an accounting of the sums owed pursuant to the Agreement which included the $45,000 due as a result of its breach under ¶6(B) of the Agreement, and all outstanding invoices, which included Invoice # 100 for $15,000 for the month of March, Invoice # 101 for $10,000 for the month of April, and Invoice #102 in for $10,000 for the month of May.

24. Upon receiving notice that Plaintiff terminated the Agreement, Defendant responded to Plaintiff for the first time since April 8th and asked Plaintiff to rescind the termination and move forward with the draft amendment.

25. Plaintiff agreed, without waiving any rights, and on May 3, 2019, Defendant and Plaintiff amended the Agreement term, payment terms, and the payment schedule through an Amendment to Agreement signed by both parties (hereinafter, the "**Amendment**.").  A copy of the Amendment is attached hereto as **Exhibit C**.

26.     The Amendment revised the term of the original Agreement from March 1, 2019 through February 29, 2020, to a new term May 1, 2019 through April 30, 2020.  It also adjusted the Schedule and Summary of Compensation to the following:

| **Month** | **Warrant (shares)** | **Payment*** | **Equity** | **Total Comp**.** |
|---|---|---|---|---|
| May, 2019 | 833 | $15,000 | $5,000 | $15,000 |
| June, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| July, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| August, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| September, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| October, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| November, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| December, 2019 | 833 | $10,000 | $5,000 | $15,000 |
| January, 2020 | 833 | $10,000 | $5,000 | $15,000 |
| February, 2020 | 833 | $10,000 | $5,000 | $15,000 |
| March, 2020 | 833 | $10,000 | $5,000 | $15,000 |
| April, 2020 | 837 | $10,000 | $5,000 | $15,000 |
| **Total** | **10,000*** | **$125,000** | **$60,000**** | **$180,000** |

27.     Plaintiff re-invoiced Defendant for the initial payment of $7,500 for May 2019, which was due upon receipt, and Plaintiff began its work pursuant to the Scope of Work in the Agreement and Amendment.  *See* Invoice 105, a copy of which is attached as **Exhibit D**.

28.     On or about May 1st, Plaintiff made the initial $7,500 payment.

29.     On May 10, 2019, Plaintiff invoiced Defendant for the second $7,500 payment, which was due May 15th.  *See* Invoice 106, a copy of which is attached as **Exhibit E**.

30.     From May 1st through May 31st, Plaintiff provided services to Defendant pursuant to the Agreement as amended. These services included, but were not limited to, a kick-off meeting with Defendant, meeting follow-up, brand positioning research, creating a brand positioning document, designing logos, and calls and emails with Defendant regarding branding work, research, and logo designs.

31. Despite providing the agreed upon services for the month of May 2019, Defendant did not pay the invoice for the second $7,500 payment to fully cover May's services that was due May 15th.

32. As of May 23, 2019, Defendant still had not paid the remaining amount due for May. Despite having not been paid in full pursuant to the terms of the Agreement as amended, Plaintiff delivered logo designs to Defendant. Plaintiff then once again requested the $7,500 that was due on May 15, 2019.

33. Defendant again claimed the company was having financial issues.

34. Once more, Defendant asked Plaintiff not to terminate the Agreement and requested Plaintiff to delay the collection of payments until the Defendant's financial issues were resolved.

35. From May 17, 2019 through November 8, 2019, at Defendant's request, and without waiving its rights, Plaintiff relied on Defendant's representation that it wanted to proceed with the Agreement, but it was delayed in doing so due to funding issues. Relying on this representation, Plaintiff did not terminate the Agreement.

36. Trying to help Defendant, Plaintiff again proposed several amendments to the Agreement to accommodate Defendant's needs and funding issues.

37. As discussions progressed, it eventually became apparent to Plaintiff that Defendant did not have any intention of moving forward with the relationship and was instead attempting to avoid the financial liability associated with Plaintiff terminating the Agreement.

38. On June 26, 2019, Plaintiff sent Defendant a proposed amendment to the Agreement and although Defendant said it would sign, it never signed the amendment.

39.     On July 29, 2019, Plaintiff again sent Defendant a proposed amendment to the Agreement and Defendant represented that it would sign the amendment, it never did so.

### Plaintiff Terminates the Agreement for Non-Payment

40.     On September 12, 2019, after proposing amendments to help the Defendant, and after reaching out several times by phone and email, Plaintiff advised Defendant that if Plaintiff did not receive payment for all outstanding invoices by September 18, 2019, it would terminate the Agreement and seek to collect all outstanding invoices, plus the agreed upon $45,000, as a result of Defendant's breach.

41.     On October 25, 2019, Plaintiff provided Defendant notice that it was going to terminate the Agreement for non-payment on November 1, 2019 if it did not receive payment of all outstanding invoices.

42.     On November 8, 2019, Plaintiff terminated the Agreement consistent with its terms and the Defendant's failure to pay.

### COUNT I: BREACH OF CONTRACT

43.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

44.     Plaintiff and Defendant were bound by the terms of the fully executed Agreement and Amendment.

45.     Plaintiff fulfilled its obligations under the Agreement and Amendment.

46.     Defendant breached the Agreement and Amendment by failing to pay Plaintiff the amounts due and by failing to issue the stock to Plaintiff.

47.     As a result of Defendant's breach, and pursuant to Plaintiff's termination on November 8, 2019, Defendant owes Plaintiff a total of $90,000.00, consisting of $45,000 in

outstanding and overdue invoices and stock certificates, plus the amount of $45,000 due upon termination for breach of the Agreement.

48. Defendant has not paid Plaintiff any of the $90,000.00 due.

49. Defendant's failure to pay the sums owed Plaintiff constitutes a breach of the Agreement.

50. Plaintiff demands full payment of the sums owed pursuant to the Agreement, including Plaintiff's reasonable attorneys' fees incurred in collecting the amounts due, as provided in Paragraph 6(C) of the Agreement.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in the amount of $90,000.00, plus attorneys' fees, post-judgment interest and such other and further relief as this Court may deem proper.

## COUNT II:  UNJUST ENRICHMENT

51. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

52. Defendant benefited from hours of services and deliverables provided by Plaintiff but failed to compensate Plaintiff accordingly.

53. Defendant knew that Plaintiff provided hours of services and created deliverables for Defendant and Defendant induced Plaintiff to provide these services so that Defendant would benefit from these services.

54. Despite demand for payment being made, Defendant benefited and continued to retain the benefit from the services and deliverables provided by Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in the amount of $90,000.00, plus, costs, post-judgment interest and such other and further relief as this Court may deem proper.

Date:  June 26, 2020                                           **COLE SCHOTZ P.C.**

                                                               */s/  Gary H. Leibowitz*
                                                               Gary H. Leibowitz (Bar No. 24717)
                                                               Irving E. Walker (Bar No. 00179)
                                                               300 E. Lombard Street, Suite 1450
                                                               Baltimore, MD 21202
                                                               410-230-0660 Telephone
                                                               410-230-0667 Facsimile
                                                               gleibowitz@coleschotz.com
                                                               iwalker@coleschotz.com

                                                               *Attorneys for Plaintiff, Warschawski Public Relations, Inc.*